IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-01721-PAB

JOLIE DOKKEN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER REVERSING ADMINISTRATIVE LAW JUDGE**

---

This matter comes before the Court on plaintiff Jolie Dokken's complaint [Docket No. 3] filed on July 21, 2010. Plaintiff, through counsel, seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

Plaintiff applied for disability benefits in November 2008. R. at 144-54. She claimed that she was unable to work due to disability as of September 1, 2007. R. at 144, 151. Plaintiff's claim was initially denied and, after a hearing, again denied in a decision by an Administrative Law Judge ("ALJ") dated September 2, 2009. R. at 75. In his decision, the ALJ found that plaintiff had "the following severe impairments:

bipolar mood disorder, anxiety disorder, personality disorder, seizure disorder, opiate dependence, headaches, and alcohol dependence." R. at 67. The ALJ determined, however, that these impairments, alone or in combination, did not meet one of the listed impairments in the regulations. *See* R. at 68. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant cannot climb stairs, ladders, or scaffolds; work with or near open dangerous moving machinery; work at unprotected heights; drive as a requirement of the job; or walk on rocky surfaces (primarily as a result of her seizure disorder history). The claimant can only be exposed to moderate noise level which is level three (office level) pursuant to the Selected Characteristics of Occupations (SCO). She must avoid concentrated exposure to extremes of heat. She can understand, remember, and carry out those kinds of work instructions and policies that can be learned within a period of approximately 30 days, with only occasional interaction with co-workers and supervisors, and with no work interaction with the public. The claimant requires work that is routine and repetitive, and which occurs in an essentially unchanging environment.

R. at 69.

Based upon these findings and the testimony of a vocational expert ("VE"), the ALJ found that, although plaintiff could not perform her past relevant work, she could perform jobs existing in significant numbers in the national economy. R. at 73-74. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. R. at 75. The Appeals Council denied plaintiff's request for review of this denial on February 4, 2010. R. at 8. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Plaintiff's Objections to the ALJ Decision

In her appeal, plaintiff argues the ALJ erred in evaluating her medical evidence by failing to assign weight to the opinions of her treating sources, disregarding her GAF scores, and neglecting evidence of her inability to afford her medications. Plaintiff also claims the ALJ erred in assessing her credibility and that his finding of no disability was not supported by substantial evidence. Because the Court finds the ALJ erred by not addressing plaintiff's ability to pay for her medications, the Court will reverse.

Plaintiff first argues that the ALJ erred by not stating the weight he was affording her treating sources. Although an ALJ must "give good reasons" in his decision for the weight afforded a treating physician's opinion, 20 C.F.R. § 416.927(d)(2), plaintiff does not identify which medical sources she considers "treating sources" and it is not clear from her medical records that she had an ongoing treatment relationship with any of the many physicians she saw briefly over the relevant period. *See* 20 C.F.R. § 416.902 (defining a "treating source" as a physician or other acceptable medical source who has seen the claimant "with a frequency consistent with accepted medical practice for the

type of treatment and/or evaluation required for your medical condition(s)"). Plaintiff's records show that she did see Dr. Joshua Campbell at least four times over several months in the first half of 2007. *See* R. at 271, 278, 281, 316. Even assuming Dr. Joshua Campbell qualifies as a treating source, his treatment notes predate plaintiff's alleged onset date of September 1, 2007 and do not provide any opinion as to plaintiff's limitations or provide evidence that would contradict the RFC formulated by the ALJ. Similarly, although plaintiff saw Dr. Holly Covington for at least two months, this treatment also predated plaintiff's alleged onset. *See* R. at 463-64. The Court finds no other evidence of a medical opinion from a treating acceptable medical source in plaintiff's records. *See Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 404.1527(d)) ("acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licenses podiatrists and qualified speech-language pathologists" and only acceptable medical sources can provide medical opinions and be considered treating sources). Because the record contains no medical opinions from treating sources during the relevant time period, the ALJ was only obligated to consider plaintiff's treatment records, which he did. *See* R. at 70-73.

Plaintiff next argues that the ALJ erred by ignoring GAF scores from her treating sources, who she claims generally assessed her GAF at 50 or below. The GAF "is a subjective determination based on a scale of 1-100 of 'the clinician's judgment of the individual's overall level of functioning.'" *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006). Plaintiff's GAF was assessed several times by Registered Nurse Malgorzata Gawron. Nurse Gawron assessed plaintiff's GAF at 50 on February 6,

2008, at 45 on April 9, 2008, at 48 on May 12, 2008, at 55 on November 20, 2008, at 50 on February 12, 2009, at 58 on May 11, 2009, and at 54 on July 16, 2009.  R. at 511; 495; 497; 503; 538; 541; 544.  Although the ALJ did not explicitly discuss these scores, they were provided by a registered nurse, who is not an acceptable medical source.  Thus, such GAF scores are not by themselves a medical opinion that the ALJ was required to discuss.  *See Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010).  Moreover, although "[a] GAF score of fifty or less . . . does suggest an inability to keep a job," plaintiff's vacillating GAF scores are consistent with the ALJ's finding that "there has not been a period of at least 12 continuous months during which the [plaintiff's] symptoms were severe enough to preclude work."  R. at 72.  Therefore, the ALJ did not err in his evaluation of the records from Nurse Gawron.

The ALJ did err, however, in affording consultive psychologist Dr. Meredith Campbell's report significant weight without discussing Dr. Campbell's opinion that plaintiff is unable to regularly comply with her medications.  Dr. Campbell opined that plaintiff's GAF score was 50, but that she had mild to moderate limitations on her ability to interact with the general public, colleagues and supervisors, was able to understand and remember simple instructions when compliant with her medications, and may have mild to moderate limitations in understanding and remembering more complex instructions.  R. at 517.  These restrictions are consistent with the RFC formulated by the ALJ.  However, Dr. Campbell also opined that without medication plaintiff's mood symptoms become "quite severe" and that, unmedicated, her depression "will make it difficult for her to understand and remember simple instructions."  *Id.*  Dr. Campbell stated that plaintiff "is not regularly compliant [with her medications] due to having no

insurance and lack of income." *Id.*

The ALJ concluded that plaintiff's psychological symptoms "respond positively to medication," but did not discuss the evidence in the record that plaintiff was unable to take these medications because she could not afford them. *See* R. at 71; 19 (plaintiff is on food stamps); 280 (plaintiff is uninsured, cannot afford medication); 283 (uninsured); 356 (plaintiff ran out of meds); 481 (plaintiff referred to benefits assistance and Lakewood Section 8 wait list); 504 (plaintiff told to bring proof of income to appointment at Jefferson Center for Mental Health). Nor did Dr. Winfrey, whose testimony the ALJ accorded great weight, discuss this evidence of plaintiff's inability to afford treatment. *See* R. at 26-36.

To the extent that the ALJ relied on plaintiff's noncompliance with her medication to deny benefits, he had a duty to develop the record and determine "(1) whether the treatment could restore the ability to work; and (2) whether the claimant's failure to follow treatment is justifiable" because the plaintiff could not afford her medications. *See Tucker v. Barnhart*, 201 F. App'x 617, 622 (10th Cir. 2006). The ALJ based plaintiff's RFC on Dr. Campbell's assessment of plaintiff's mild to moderate limitations while she was medicated while ignoring Dr. Campbell's statement that plaintiff's limitations may become severe without medication. Although it is not clear that the ALJ relied on plaintiff's noncompliance to deny benefits, he did assign significant weight to Dr. Campbell's evaluation without discussing Dr. Campbell's opinion that plaintiff is not regularly compliant with her medications because of her low income. *See* R. at 73. Plaintiff's ability to afford her treatment was significantly probative evidence that the ALJ

was obligated to address but did not. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significant probative evidence he rejects"). The Court will therefore reverse and remand for the ALJ to consider plaintiff's ability to pay for her medications. *See Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . . To a poor person, a medicine that he cannot afford to buy does not exist.").

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the September 2, 2009 decision of the Commissioner that plaintiff was not disabled is REVERSED and REMANDED for further proceedings consistent with this opinion.

DATED May 24, 2011.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge